**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| SERGIO S.E.,[1] | : | |
| | : | |
| Petitioner, | : | Civil Action No. 20-6751 (JMV) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ORLANDO RODRIGUEZ, et al., | : | |
| | : | |
| Respondents. | : | |

**VAZQUEZ, District Judge**

This matter comes before the Court on Petitioner Sergio S.E.'s motion for injunctive relief. D.E. 19. Petitioner, a civil immigration detainee, is subject to a final order of removal and requests that the Court enjoin his removal from the United States until his petition for habeas corpus can be decided on the merits. For the reasons that follow, the Court grants the motion.

**I.   BACKGROUND**

Under Civil Action No. 20-3982, Petitioner previously filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking release due to the COVID-19 pandemic. The Court denied the petition. Petitioner then filed the current Complaint for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus, seeking a stay of removal. D.E. 1. Respondents filed opposition. D.E. 10. Respondents thereafter filed a letter providing a status

---

[1] Petitioner is identified herein only by his first name and the first initials of his surnames in order to address certain privacy concerns associated with Section 2241 immigration cases. This manner of identification comports with recommendations made by the Judicial Conference of the United States' Committee on Court Administration and Case Management.

update of Petitioner's immigration matter. D.E. 13. Respondents reported that on July 1, 2020, an Immigration Judge ("IJ") affirmed a finding of no reasonable fear, following a reasonable fear interview pursuant to 8 C.F.R. § 1208.3[2] and the United States Citizenship and Immigration Services's ("USCIS") denial. *Id.* Respondents added that a recent Supreme Court decision, *Department of Homeland Security v. Thuraissigiam*, -- U.S. --, 140 S. Ct. 1959 (2020), undercut Petitioner's argument as to the Suspension Clause. *Id.* Petitioner responded, distinguishing *Thuraissigiam*. D.E. 14.

On August 26, 2020, Petitioner filed his current motion for emergent injunctive relief. D.E. 19. Petitioner indicated that he was to be removed "imminently after" August 26, 2020. *Id.* at 2. The Court then held a conference call with counsel on August 26, 2020. At the time, Respondents indicated that Petitioner's removal was not imminent because of extreme weather conditions. The Court stayed Petitioner's removal for fourteen days. Respondents then filed opposition to Petitioner's motion, D.E. 25, to which Petitioner replied, D.E. 26.

Petitioner was born in Guatemala in 1978. D.E. 1 at ¶ 3. An order of removal was entered as to Petitioner on June 18, 2000. Petitioner was then removed from the United States on June 19, 2000, and thereafter unlawfully reentered the United States in 2007 and 2009. *Id*. Later, Petitioner worked at a restaurant in Long Valley, New Jersey from March 2014 to October 2017. *Id.* at ¶ 4. Petitioner alleges that he worked six or seven days a week at the restaurant without overtime pay or health insurance. *Id.* Petitioner continues that he worked under "horrible and dangerous" conditions, that he was abused verbally on a daily basis, and that his employer threatened to call immigration authorities if Petitioner failed to comply with the employer's demands. *Id.* On March

---

[2] Section 1208.3 concerns asylum applications. Thus, it does not appear that the interview addressed Petitioner's T Visa application.

17, 2020, United States Immigration and Customs Enforcement ("ICE") notified Petitioner that ICE intended to reinstate the 2000 order of removal, and Petitioner has been detained by ICE since pursuant to 8 U.S.C. § 1231.  Based on his work conditions while at the restaurant, Petitioner filed an application for a T Visa (or, more formally, for T-1 nonimmigrant status) on May 23, 2020, indicating that he had been a victim of unlawful trafficking.  *Id.* at ¶¶ 8, 21-24.

As noted, ICE indicated that Petitioner faced imminent removal as of August 26, 2020. Petitioner's current request for injunctive relief is essentially based on the fact that if Petitioner is removed, he will be automatically disqualified from obtaining a T Visa because he will no longer be physically present in the United States.  *Id.* at ¶ 29.  Plaintiff asserts that he has a Fifth Amendment Due Process liberty and property interest to seek the T Visa.  D.E. 19 at 7-10.[3]  In opposition, Respondents state that the Court lacks jurisdiction and that Petitioner does not have a have a protectable constitutional interest.  D.E. 25.

## II.     Legal Standard and Analysis

Preliminary injunctions and restraining orders are governed by Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1.  A preliminary injunction is "extraordinary" relief. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002).  Injunctive relief may only be granted when a party demonstrates that he has a reasonable probability of success on the merits, he will suffer immediate and irreparable harm if the injunction does not issue, the grant of preliminary relief will not result in greater harm to the nonmoving party, and the injunctive relief is in the public interest.  *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012) (citing *Crissman v. Dower Down Entm't*

---

[3] Petitioner also references the Administrative Procedure Act as well as participation in government investigations, D.E. 10-11, but neither reference is sufficiently analyzed to justify the relief sought here.

*Inc.*, 239 F. 3d 357, 364 (3d Cir. 2001).  A stay of removal is also governed by similar considerations.  *Nken v. Holder*, 556 U.S. 418, 426 (2009).

Petitioner is subject to a final order of removal.  Judicial review of removal orders is governed by 8 U.S.C. § 1252, which provides in part as follows:

> (a) Applicable provisions
> . . .
>
> (5) Exclusive means of review
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).
>
> (b) Requirements for review of orders of removal
> . . .
>
> (9) Consolidation of questions for judicial review
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.
> . . .
>
> (g) Exclusive jurisdiction
> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241

> of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252. Pursuant to the statute, district courts rarely have jurisdiction over alien claims related to removal proceedings. *E.O.H.C. v. Sec'y U.S. Dept. of Homeland Sec.*, 950 F.3d 177, 180 (3d Cir. 2020). Instead, the typical steps that an alien in removal proceedings must follow is to litigate his claims before an immigration judge, with a right to appeal to the Board of Immigration Appeals ("BIA"), and, if necessary, to the relevant court of appeals. *Id.*

Plaintiff has applied for a T Visa. To qualify for the visa, Petitioner must have been a "victim of a severe form of trafficking in persons" and must be "physically present in the United States[,]" among other requirements. 8 U.S.C. § 1101(a)(15)(t). However, "[a]n alien who has . . . *been removed from*[] the United States at any time after the act of a severe form of trafficking in persons is *deemed not present* in the United States as a result of such trafficking in persons[,]" 8 C.F.R. § 214.11(g)(2) (emphases added), subject to certain exceptions not raised here. Thus, if Plaintiff is removed, he will be automatically ineligible for the T Visa unless he able to amount a successful challenge to the regulation.[4]

The regulation also provides that "[t]he filing of an application for T nonimmigrant status has no effect on DHS authority or discretion to execute a final order of removal, although the alien may request an administrative stay of removal pursuant to 8 CFR 241.6(a)."[5] *Id.* at §

---

[4] The statute, 8 U.S.C. § 1101(a)(15)(t), while having the "physically present" requirement, does not expressly indicate that a Petitioner must by physically present in the United States while the application is being decided. Petitioner does not challenge the regulation.

[5] Petitioner does not indicate whether he applied for an administrative stay as permitted in the regulation. Respondents, however, do not argue that such failure is relevant to the Court's

5

214.11(d)(1)(ii).  At the same time, the regulation states that once an alien submits an application, USCIS will conduct an initial review to decide if the application is "bona fide"; if USCIS finds the request is bona fide, then the execution of any final order of removal is automatically stayed.  *Id.* at §§ 214.1(d)(7), 214.11(e)(3).

The threshold question presented is whether this Court has jurisdiction to hear this matter.  The Court concludes that it does in light of the Third Circuit's recent decision in *E.O.H.C.*, 950 F.3d at 177.  In that case, the petitioners (a father and his minor daughter) were from Guatemala and reached the United States through Mexico.  *Id.* at 180.  The government wished to return the petitioners to Mexico while deciding whether to grant their asylum application or to remove them to Guatemala.  *Id.*  The petitioners filed an emergency petition with the district court, arguing that returning them to Mexico pending their appeal to the BIA was impermissible on numerous grounds.  *Id.*  The district court dismissed the petitioners' claims, finding that it lacked subject-matter jurisdiction.  *Id.* at 182.  With the exception of a statutory right to counsel claim, the Third Circuit determined that the district court had jurisdiction to hear the petitioners' remaining claims because those assertions could only be heard "now or never."  *Id.*

The court in *E.O.H.C.* reviewed the scope of 8 U.S.C. § 1252(b)(9) and balanced it against two presumptions:  the strong presumption in favor of judicial review of administrative action and the presumption that a narrower reading of a jurisdiction-stripping provision is favored.  *Id.* at 184 (quoting *INS v. St. Cyr*, 533 U.S. 289, 298 (2001); *Alli v. Decker*, 650 F.3d 1007, 1013 n. 9 (3d Cir. 2011)).  The Third Circuit then concluded that "now-or-never" claims do not fall within the ambit of Section 1252(b)(9).  *Id.*

---

decision.  As a result, the Court does not address whether Petitioner's motion would be precluded if he failed to first take advantage of the administrative remedy.

The *E.O.H.C.* court explained as follows:

> We distill a simple principle from *Jennings*, [-- U.S. --, 138 S. Ct. 830 (2018) (plurality opinion] *Preap*, [-- U.S. --, 139 S. Ct. 954 (2019)] and the presumptions favoring judicial review. That principle informs how we read the phrase "arising under." We must ask: If not now, when? If the answer would otherwise be never, then § 1252(b)(9) poses no jurisdictional bar. *In other words, it does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal.* As the First Circuit has noted, the point of the provision is to channel claims into a single petition for review, not to bar claims that do not fit within that process. *See Aguilar v. U.S. ICE*, 510 F.3d 1, 11 (1st Cir. 2007).
>
> That is why the Supreme Court has called § 1252(b)(9) the " 'zipper' clause." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). The provision is designed to channel claims together for judicial review. *Id.* That is also why the provision is captioned "*Consolidation* of Questions for Judicial Review." 8 U.S.C. § 1252(b)(9) (emphasis added). It does not reach "claims that are independent of, or wholly collateral to, the removal process," like "claims that cannot effectively be handled through the available administrative process." *Aguilar*, 510 F.3d at 11; *accord J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (collecting cases); Reply Br. 16 (interpreting *Chehazeh v. Att'y Gen. of the U.S.*, 666 F.3d 118 (3d Cir. 2012)); Oral Arg. Tr. 20–21.
>
> Some hypotheticals drive the point home. Consider a detained alien who needs halal or kosher food, or a diabetic who alleges that the Government is depriving him of insulin. Or take *Jennings*'s example of a challenge to prolonged detention. *See* 138 S. Ct. at 840 (plurality opinion). *Under the Government's reading, these aliens could get no judicial review until the Board enters their final orders of removal. That cannot be so. For one, the final order of removal may never come. Even if it does, review and relief may come too late to redress these conditions of confinement. Id.*; *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 484[] (1991) (holding that the INA did not strip jurisdiction over certain claims because otherwise "meaningful judicial review . . . would be foreclosed").
>
> The now-or-never principle governs here too. Although appellants must await a final order of removal to challenge their removal to Guatemala, § 1252(b)(9) does not bar their challenges to

> their temporary return to Mexico. So as we will discuss, most of their claims may proceed.

*Id.* at 185-86 (emphases added).

In light of *E.O.H.C.*, this Court concludes that it does have jurisdiction to hear Petitioner's claims. If Petitioner cannot raise his claim concerning the T Visa at this point, and Petitioner is removed (which is reportedly imminent), then Petitioner will never be able to raise his T Visa arguments. This is because the regulation, as noted, provides that if Petitioner is removed, then he is no longer eligible for the T Visa. Petitioner's claims are now or never.

Respondents assert that that the Supreme Court's recent decision in *Thuraissigiam* countenances a different result. The Court disagrees. *Thuraissigiam* addressed the constitutional rights available to an alien who was detained twenty-five yards into the country after entering illegally. 140 S. Ct. at 1967. Thuraissigiam was therefore subject to expedited removal but he wanted to remain in the United States to litigate his asylum claim. A plurality of the Court strongly suggested that habeas relief may be limited to its traditional core concern, that is, release from unlawful detention. *Id.* at 1963 (plurality opinion). As a result, the plurality ruled, the Suspension Clause of the Constitution was not applicable because Thuraissigiam was not seeking release from unlawful confinement; instead, he was seeking to stay in detention in the United States while he pursued his asylum claim. *Id.* at 1968-80. The plurality also noted that Thuraissigiam's requested relief – a vacatur of his removal order and a new opportunity to reply for relief from removal, such as asylum – "might fit an injunction or writ of mandamus" but not the habeas writ. *Id.* at 1969-70. The Supreme Court also denied Thuraissigiam's due process argument. *Id.* at 1981-83.

The Court finds that *Thuraissigiam* is not applicable for the following reasons. First, Respondents only cite to the plurality opinion. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court

8

may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]" *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks and citation omitted). Here, Respondents make no effort to analyze which concurrence is applicable because it agreed on the narrowest grounds.[6] Second, the plurality limited its analysis as to the scope of habeas relief because Thuraissigiam agreed that the Supreme Court did not have to consider the potential breadth of habeas other than as it existed in 1789. *Thuraissigiam*, 140 S. Ct. at 1969. Petitioner has not made a similar concession here. Finally, the Supreme Court, in addressing the due process argument, also noted the difference between aliens who "have established connections" in the United States as opposed to those who do not. *Id.* at 1963-64. Obviously, Petitioner here has established connections in the United States. He has apparently been in the county over 10 years and has a family here. In sum, the plurality opinion in *Thuraissigiam* on which Respondents rely is not binding precedent; *E.O.H.C.* is. The Court follows *E.O.H.C.* and finds that it has jurisdiction.

Turning to the merits of Petitioner's claim, the critical inquiry is whether he has a protectable property or liberty interest in *seeking* (rather than obtaining) a T Visa. Respondents say that he does not and cite to, among other case, *Rojas v. Moore*, No. 19-20855, 2019 WL 3340630 (S.D. Fla. March 26, 2019). D.E. 25 at 2 & n. 2. The district judge in *Rojas* found that "no T-visa applicant has a constitutionally-protected liberty interest in remaining in the United States upon the filing of T-visa application." *Id.* at *1. The *Rojas* court found that it lacked subject matter jurisdiction because review was limited to the court of appeals. *Id.* at *2. The Court does

---

[6] Of note, it *appears* that the narrowest concurrence was authored by Justice Breyer, and joined by Justice Ginsberg, because Justice Breyer limited his concurrence to the "particular case" before the Court and emphasized that the question presented was interpreted "as applied to respondent." *Thuraissigiam*, 140 S. Ct. at 1988 (Breyer, J., concurring).

not follow *Rojas*, which is not binding authority, because the court in *Rojas* appears to have conflated the issue of a protectible constitutional interest with that of a court's jurisdiction. The *Rojas* court did not explain why the petitioner did not have a constitutionally protected interest. And to the extent the judge in *Rojas* found that it did not have subject matter jurisdiction, the Court disagrees for the reasons stated above.

Petitioner cites two district court decisions for the proposition that aliens have liberty interests when seeking a T Visa. D.E. 19 at 9. *S.N.C. v. Sessions*, No. 18-7689 2019 WL 6175902 (S.D.N.Y. Nov. 26, 2018), and *Fatty v. Nielsen*, No. C17-1535 2018 WL 3491278 (W.D. Wash. July 20, 2018). In *S.N.C.*, the district court found that the "[p]etitioner has raised substantial claims as to whether she has a protectable [constitutional] interest in having her application for T Nonimmigrant Status adjudicated." *S.N.C.*, 2019 WL 6175902 at *6. The judge in *S.N.C.* reasoned that the petitioner was applying for a specific form of relief made available for victims of human trafficking rather than pursuing a routine application to adjust her status. *Id.* The court in *S.N.C.* further found persuasive the decision in *Fatty*. *Id.* The petitioner in Fatty also sought a stay of his removal proceedings pending the resolution of his T Visa application. *Fatty*, 2018 WL 3491278 at *1. The district in judge in *Fatty* determined that the petitioner also had raised a viable procedural due process claim "based upon his interest [in] obtaining a meaningful determination on his T visa application." *Id.* at *2.

Petitioner also relies on *Tazu v. Barr*, Civ. No. 19-07872 (D.N.J. Mar. 29, 2019), a case currently pending before the Third Circuit. In *Tazu*, the petitioner entered the United States unlawfully and then remained for twenty-five years, building a life and a family. *Id.* at 2-3.[7] In

---

[7] Judge Salas issued a verbal opinion in *Tazu*, the transcript of which can be found at D.E. 39 under docket number 19-cv-07872. In citing to the *Tazu* opinion, the Court refers to the pages from the transcript.

2017, the petitioner's son filed a Form I-130 Petitioner for Alien Relative, on behalf of the petitioner; USCIS granted the petition in September that same year. *Id.* at 3. The petitioner, however, never took the necessary next step to apply for a Form I-212 (possibly as the result of ineffective counsel) so the petitioner never became a lawful permanent resident. *Id.* at 3-4. In 2019, during a routine check in, ICE detained the petitioner and indicated that it intended to remove the petitioner imminently. *Id.* at 4. The petitioner then filed a habeas petition before Judge Salas seeking a stay of his removal and release based on the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act. *Id.* at 4-5.

Judge Salas ruled against the petitioner, finding that the petitioner had not shown a likelihood of success on the merits. *Id.* at 4, 5. Judge Salas made the following findings, among others: (1) as to the petitioner's right to reopen his removal proceedings *sua sponte*, the petitioner was pursuing a regulatory right that did not create a constitutionally protectable due process right, (2) as to the petitioner's right to pursue the provisional waiver process, the petitioner did not have a constitutional right to remain in the United States to complete the process (and that the petitioner did not show that he was eligible for the waiver). *Id.* at 8-18. As a result, Judge Salas denied the petitioner's request for a stay of removal. *Id.* at 20.

Following Judge Salas' decision, the petitioner appealed, and the Third Circuit issued an order enjoining the petitioner's removal from the United States pending further order of the circuit. *Tazu v. Attorney General*, C.A. No. 19-1715 (3d Cir. May 2, 2019). The Circuit indicated that it had "the authority to enjoin [Tazu's] removal from the United States pending appeal notwithstanding 8 U.S.C. § 1252(g)." *Id.* The Circuit has not yet issued an opinion on the merits of the appeal.

11

Respondents argue that *Fatty* was wrongly decided because *Fatty* relied on pre-REAL ID Act law and that it misconstrued a prior decision concerning a cognizable liberty interest (right to release when removal no longer becomes reasonably foreseeable with the right to a stay of removal when an application for discretionary relief remains pending).  D.E. 10 at 20-21.  Respondents continue that *S.N.C.* was similarly erroneous because it relied on *Fatty*.  *Id.*  Instead, Respondents' posit, that the Due Process Clause does not provide relief because the petitioner seeks a benefit that government officials may deny in their discretion.  *Id.* at 18 (citing *Town of Castle Rock, Colo. v. Gonzalez*, 545 U.S. 748, 756 (2005); *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462-63 (1989)).

Here, a statute, 8 U.S.C. § 1101(a)(15)(t), rather than a regulation sets forth the parameters of Petitioner's eligibility for the T Visa.  The pertinent regulation, 8 C.F.R. § 214.11, provides additional definitions and sets forth the application process.  As noted, the regulation expressly provides that the Department of Homeland Security ("DHS") may execute a final order of removal even if an applicant has filed for a T Visa.[8]  8 C.F.R. § 214.11(d)(1)(ii).  Yet, the regulation also provides that once an applicant leaves the United States, he is no longer eligible for the visa.  *Id.* at § 214.11(g)(2).  So, according to the regulation, ICE can execute an order or removal while an application is pending and that very act (removal) will make the applicant ineligible for the visa.

Critically, once an alien applies for the visa, the regulation expressly provides that "USCIS *will conduct* an initial review to determine if the application is bona fide."  *Id.* at § 214.11(d)(2)(7) (emphasis added).  If USCIS determines that the application is bona fide, then any order of removal

---

[8] The same provision permits an applicant to apply for an administrative stay of removal pending determination of his or her application.  8 C.F.R. § 214.11(d)(ii).  As discussed in note 5, Petitioner does not indicate whether he took advantage of this option.  At the same time, Respondents do not argue that Petitioner must first apply for the administrative stay before seeking court intervention.

12

is automatically stayed until a final decision is reached. *Id.* at § 214.11(e)(3). Moreover, if USCIS determines that an applicant is eligible, then the regulation provides that "USCIS *will approve* the application and grant the T-1 nonimmigrant visa." *Id.* at § 214.11(d)(2)(9) (emphasis added). The only apparent limitation on the grants of such visas are annual numerical caps established by statute. *Id.* at § 214.11(j). Thus, despite Respondents' arguments to the contrary, it does not appear that USCIS has discretion to deny an appropriate application – the regulation uses the mandatory "will" rather than the permissive "may." In addition, the regulation requires USCIS to consider an application and make an initial determination as to whether it is bona fide. As a result, the Court concludes that Petitioner has demonstrated that he is likely to establish a constitutionally protected interest in applying for a T Visa.[9]

As to the remaining factors, they also favor the granting of injunctive relief and in ordering a stay of removal. The imminent, irreparable harm to the Petitioner is clear – he will automatically be ineligible to receive the T Visa. The balance of the hardships also favor the Petitioner as Respondents do not indicate any undue hardship if the Petitioner's removal is stayed. Finally, the public interest also weighs in favor the Petitioner. The public has a clear interest in protecting persons who have been the victims of unlawful trafficking, as reflected by Congress in the statute; that interest is only furthered by ensuring that applicants have a legitimate opportunity to have their matters considered on the merits by USCIS.

---

[9] While the regulation nevertheless grants ICE the discretion to remove the Petitioner while his application is pending, the Court has serious concerns over the propriety of this language given that the same regulation provides that such removal will apparently automatically disqualify Petitioner from eligibility.

**III.     Conclusion**

For the foregoing reasons, the Court grants Petitioner's request for emergent relief. Petitioner's order of removal is hereby stayed until USCIS has had an opportunity to decide Petitioner's T Visa application consistent with 8 C.F.R. § 214.11.


Dated:  September 11, 2020

_____
JOHN MICHAEL VAZQUEZ
United States District Judge